MAGER & GOUGELMAN, INC. *v.* UNITED STATES

**No. 6065.**—Invoices dated Neuhaus, Germany, June 18, 1938, etc.
Certified August 19, 1938.
Entered at Chicago, Ill., July 21, 1938, etc.
Entry No. 517, etc.

(Decided November 7, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: This case is before us on an application for review, under authority of section 501 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1501), of the reappraisement decision, reported in Reap. Dec. 6014, of Keefe, J., who held the appraised values of glass eyes imported from Germany and entered at the port of Chicago to be "the freely offered prices of these particular glass eyes, either for home consumption or for export," section 402 (c) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1402 (c), and section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (d)).

Appellant, plaintiff below, has assigned 9 errors under rule 38 of this court, as amended in T. D. 49308. Our conclusion disposes of all but we deem it unnecessary to discuss each separately.

The shipments in question included two kinds of glass eyes. Both were entered at appellant's claimed export value, section 402 (d), *supra*; those with blended iris at reichmarks .78 each, and the others with the unblended iris at reichmarks .48 each. Appraisement was made on the basis of foreign value, section 402 (c) as amended, *supra;* the glass eyes having the diffused or blended iris being advanced to reichmarks 1. each, and those with the sharp iris edge or unblended iris to reichmarks .60 each.

The opinion of the trial judge presents a clear, concise, and correct review of the evidence. Further summation is unnecessary.

Appellant's contention that no foreign value existed for the instant merchandise is based on the premise that the German market, at the time of exportation, was controlled, thereby violating the freedom of offer required by statute, section 402, *supra*. The record discloses, however, that the restriction was limited to minimum prices and did not extend to resale or use. Such a condition does not create a controlled market for tariff purposes, *United States* v. *Kresge Co. et al.*, 26 C. C. P. A. 349, C. A. D. 39, which involved the dutiable value of Christmas tree ornaments exported from the same area in Germany— the Lauscha district—from which the instant merchandise was shipped, and in which case the court stated:

* * * that, although the manufacturers could not legally sell at prices lower, they could legally sell at prices higher, than the established catalog prices, and

that the involved and like merchandise was freely offered for sale at the catalog prices by the manufacturers to all purchasers in the principal market of Germany in the usual wholesale quantities and in the ordinary course of trade. We are unable to hold, therefore, that the involved and like merchandise was not freely offered for sale by the manufacturers at the catalog prices to all purchasers in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497.

The *Diagonale* case, *supra*, showed that the minimum price of filigree silver was controlled by an association of dealers in the principal market of Genoa, Italy, but no restriction was imposed on the use, disposition, or resale of such merchandise upon purchasers thereof. After recognizing that such a factual basis presented a new proposition of law, the court employed the following reasoning:

We would first observe that to hold that the mere fixing of prices of merchandise by an association of dealers, without any restriction upon the purchaser thereof, prevents such prices, if freely offered in the ordinary course of trade as the statute provides, from being considered in determining the dutiable value of merchandise, would in all probability prevent any finding of foreign or export value respecting a very large volume of importations of merchandise dutiable at an ad valorem rate. While this fact alone, of course, should not be controlling in determining the question at issue, it is a factor proper to be considered in determining the intent of Congress in the enactment of section 402 (c). We have had many cases before us where it appeared that foreign prices of merchandise have been fixed by cartels or syndicates such as that referred to in the case of *United States* v. *Davies, Turner & Co., supra,* but, so far as we can learn from the adjudicated cases, it has never before been contended that this fact alone prevents a finding of foreign or export value of imported merchandise.

Again, if the appellate division is correct in holding that the mere fact of fixing of prices by an association of dealers, without any restriction upon the purchasers of the merchandise, constitutes a controlled or restricted market in the sense that we are discussing, it must be because such an agreement prevents competition between dealers in pricing their merchandise to purchasers, and it would thus necessarily follow that competition with respect to *price* of merchandise is an indispensable element of a free market. If it be true that there must in all cases be competition in the price of an article in order to make a free market therefor, there might never be found, under certain circumstances, a foreign or export value for patented articles. We have had many cases where it was apparent that there was no competition in the price of an imported article, but if the article was freely offered for sale by the manufacturer in the country of exportation in the usual wholesale quantities and in the ordinary course of trade, this was held to be sufficient to establish foreign value if no "such or similar" merchandise was offered for sale by other manufacturers.

We are constrained to hold that competition in the price of merchandise in the country of exportation is not an indispensable element in establishing the foreign value thereof, and it necessarily follows that the mere fact that an association fixes the price at which its members shall sell merchandise, without any restrictions upon the purchasers thereof, does not constitute a controlled or restricted sale in the sense that such price may not be considered in determining the foreign value of merchandise.

Under the principle announced in the cited authorities, the fixing of minimum prices by the Reichsverband German Eye Artisans for the merchandise in question did not create a controlled foreign market for tariff purposes.

Sales of both kinds of the glass eyes in question were made in the German market to three classes of buyers, i. e., local dealers, wholesalers, and so-called retailers comprising opticians, doctors, and clinics. Each class paid different prices. Local dealers paid the lowest and retailers the highest. Some attempt was made to show the usual wholesale quantity in which the sales were made, but the record in this respect falls far short of meeting statutory requirements. The testimony of plaintiff's witness, Greiner, is insufficient on this point. The witness not only failed to show familiarity with the foreign market but his statements relate to a period of time too remote from the date of exportation of the instant merchandise. Witness McLaughlin's testimony is to the effect that the quantity sold did not affect the price, and the special agent's report (exhibit 5) states that "wholesale buyers order anywhere from 200 to 500 eyes at a time." Concerning such a vague and indefinite line of proof, the lower court said—and we concur—that "I am unable to find anything to indicate the usual quantity in which this class of merchandise is bought and sold in the wholesale market of the country from which exported."

There is nothing herein to dispute the conclusion that sales to all of said classes of purchasers were made in the ordinary course of trade and in the wholesale quantities. That one class is known as "wholesalers" and another as "retailers" is not the criterion in finding dutiable value. "The law is not concerned with the persons who buy, but the manner in which they buy." *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, 147, T. D. 42216. It is the price at which merchandise is freely offered to all purchasers that is determinative.

The price lists (plaintiff's collective exhibit 3 and defendent's collective exhibit 5) reveal that the prices to wholesalers were directed toward those "representing outside distributors," indicative of a particular class of buyers, thus rendering inapplicable to the present issue the prices so charged. The prices to "Retail Dealers, Opticians, Doctors, Clinics" were freely offered at which anyone could buy. They embrace all the elements essential to dutiable value, section 402, *supra*. For the glass eyes under consideration, they are the values found by the appraiser, and the same prices prevail whether the merchandise is sold in the German market or for export to the United States.

The judgment of the lower court is affirmed.

Judgment will be rendered accordingly.