S. P. SKINNER & CO., INC., J. E. BERNARD & CO., INC.
*v.* UNITED STATES

**No. 7833.—**

Entry No. 19888.

(Decided May 25, 1950)

*Lane, Young & Fox (William H. Fox* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

LAWRENCE, Judge: Plaintiff has filed this appeal for a reappraisement of certain articles of so-called "Peerage" brassware manufactured by Pearson-Page-Jewsbury Co., Ltd., of Birmingham, England, and imported at the port of New York.

The articles in controversy were invoiced at certain *per se* unit prices less a discount of 17½ per centum, less 2½ per centum cash discount, case and packing not included.

The importer entered the articles at the *per se* unit prices as invoiced, less 2½ per centum cash discount, plus case and packing, and they were appraised at said *per se* unit prices, plus 10 per centum, less 2½ per centum cash. discount, plus case and packing.

It is clear from the record and briefs that there is no dispute concerning the discount of 17½ per centum which was not deducted by the importer in making entry of the goods nor is there any dispute as to the cash discount of 2½ per centum which was deducted by the importer.

The sole question in controversy is whether the item of 10 per centum discount which the appraiser added to the invoiced *per se*

unit prices when appraising the merchandise is properly part of its dutiable value.

The parties have agreed as follows:

1. That if the court finds that foreign value is the proper statutory basis for determining the dutiable value of the merchandise then the values at which the importer entered the merchandise represent the dutiable foreign value under section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), as amended by the Customs Administrative Act of 1938.

2. That if the court finds that export value is the proper statutory basis for determining the dutiable value of the merchandise then the values found by the appraiser represent the export value pursuant to section 402 (d) of said act (19 U. S. C. § 1402 (d)).

3. That articles similar to those in question are not freely offered for sale, or sold, in England for exportation to the United States.

I find, in view of the above agreements of the parties, that all elements of appraisement required by section 402 (c) and (d), *supra*, are implicit in the determination and findings of the appraiser. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371. Therefore, I need concern myself solely with the question whether the item of 10 per centum discount should be included in the dutiable value of the merchandise.

Plaintiff introduced the testimony of S. P. Skinner, president of S. P. Skinner & Co., Inc., the real importer, who has been associated with that company for 27 years; also an affidavit executed by Cyril Arch Jewsbury, a director of the foreign manufacturer, who testified from 11 years' experience with his concern. This affidavit is accompanied by certain papers, including a price list of May 1948, and invoices of all sales for home consumption in the United Kingdom made during the months of April and May 1948, all of which were received in evidence as collective exhibit 1.

Defendant offered in evidence a copy of a letter addressed to the importer on April 16, 1948, by the attorney for plaintiff herein, which was marked exhibit 2, and a report of a Treasury representative dated January 28, 1949, consisting of 8 pages and 11 exhibits, which was marked collective exhibit 3.

It is contended by plaintiff that there is no export value for the merchandise in controversy for the reason that such merchandise is not freely offered for sale and sold to all purchasers in the ordinary course of trade for exportation to the United States; that it is only offered for sale and sold in the United States to certain purchasers selected by the seller and its sole agent. Stated another way, it is contended that offers for sale and sales for export are restricted to certain buyers and are not freely made to all buyers.

It appears from the affidavit (collective exhibit 1) that offers for sale and sales of the merchandise here under consideration are limited to three classes of purchasers as indicated below:

(a) To S. P. Skinner & Co., Inc., in accordance with the terms of a certain agency agreement, in certain minimum specified quantities of particular articles but without restriction as to the value in respect of any order, at the company's list prices, less a discount of 17½%, less a cash discount of 2½%.

(b) To wholesalers who sell only to retail dealers and who do not sell to consumers, in certain minimum specified quantities of particular articles but without restriction as to the value in respect of any order, at the company's list prices, less a discount of 10%, less a cash discount of 2½%.

(c) To such retail dealers who sell only to consumers, in certain minimum specified quantities of particular articles, provided such dealers agree to purchase a quantity of goods of a value not less than fifty pounds sterling (£50) in respect of any order. Such dealers are offered the goods at the company's list prices, plus an addition thereto of 10% for service charge, less a cash discount of 2½%.

In a paper marked "Exhibit No. 6" accompanying collective exhibit 3 appears the statement of Cyril Arch Jewsbury above referred to that—

The method of distribution in the United States of America is both through the main Agents, Messrs. S. P. Skinner Company, and a few selected jobbers, and also direct to retailers where Messrs. S. P. Skinner Company act as Companies representatives in soliciting orders and, in the latter case, work on a commission basis.

Mr. Skinner testified that he is the sole agent in the United States for the English manufacturer of the imported articles; that they are offered for sale to him for export to this country at list prices less 17½ per centum discount, less 2½ per centum discount, but that his company is the only buyer who can purchase merchandise on that basis. He also testified that such merchandise is offered for sale for export to this country to selected wholesale dealers who sell only at wholesale at list prices, less 10 per centum discount, less 2½ per centum discount, and that "* * * we select our wholesalers." The witness further testified that this merchandise was offered for sale for export to this country to selected retail dealers at the list prices, plus 10 per centum, less 2½ per centum discount, provided they order a minimum quantity of the articles as specified, and the order is of a minimum value of not less than 50 pounds sterling.

Accordingly, it would seem that the merchandise is not freely sold for export to all retailers in the United States.

The defendant contends in its brief that the item of 10 per centum is charged to all retail dealers in the United States and for that reason is properly a part of the dutiable value, and "That the alleged 'selection' of retail dealers and the requirement that such buyers purchase in lots of a minimum of fifty pounds sterling are not such restrictions as

would warrant a finding that no export value existed under section 402 (d)."

It would seem to be a sufficient answer to these contentions to point out that the evidence discloses that Mr. Skinner is the sole agent in this country for the manufacturer and that no sales of the commodity may be made to retailers or other purchasers unless they are made directly through the office of Mr. Skinner or with his knowledge and consent.

The Government seeks to minimize the effect of Mr. Skinner's testimony by asserting that it is not supported by documentary evidence. It may be pointed out that neither is it contradicted by any documentary evidence. In a further effort to discount Mr. Skinner's testimony, defendant refers to the case of *Charles Happel, Inc., et al.* v. *United States*, 23 Cust. Ct. 250, Reap. Dec. 7715, wherein the court stated—

> This affidavit, which is unsupported by price lists or other evidences of sales or offers to sell, is entitled to little weight in and of itself. *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States, supra.* [28 C. C. P. A. (Customs) 19, C. A. D. 118.] Moreover, the veracity of the statement is open to grave doubt in view of certain documents introduced into evidence by the defendant.

Commenting upon that opinion, defendant states that—

> The same situation exists in the instant case. The testimony of Mr. Skinner with respect to "selection" is unsupported by any documentary evidence such as price lists or a contract or any paper showing such a fact to exist. Moreover, the veracity of the statement in the case at bar is open to grave doubt in view of the documentary exhibits introduced by both parties, none of which indicates any such right of selection.

I cannot subscribe to the statement that "The same situation exists in the instant case" as in the *Happel* case above quoted. In that case there was a seeming conflict between statements in the documentary proof. In the case before me, I have the sworn testimony of a well-qualified witness who was subjected to cross-examination and whose testimony is not refuted or shown to be in real conflict with any proof, oral or documentary, submitted by the defendant.

An analysis of the entire record leaves no doubt in my mind that the elements necessary to establish export value are not present in this case in that the evidence discloses conclusively that the merchandise with which I am here concerned was not "freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States," as required by section 402 (d), *supra.* Note *United States* v. *Mexican Products Co.*, 28 C. O. P. A. (Customs) 80, C. A. D. 129, and cases therein cited.

This brings me to a consideration of the question whether there existed a foreign value for the brassware in controversy.

It is the contention of the defendant in its brief that if the restrictions which I have indicated above were sufficient to defeat the application of statutory export value to the merchandise in controversy, then, by the same token, there is no room for the operation of statutory foreign value. From an examination of the record, however, I do not find the presence of those elements of control in the foreign home market which were shown to exist with respect to the export trade.

Upon the question of foreign value, the testimonial record contains the following excerpts from the examination of Mr. Skinner:

Q. Now, you have testified that you were personally familiar with the offers for sale by the Pearson Page Jewsbury Co. of this brassware for home consumption in England. Will you please state how it is offered for sale to the buyers for home consumption in England?—A. Well, in England I think you find the terms are put in the catalogue right at the front. It is offered at the home market value prices less 3¼% for payment in London, or less 2½%. In other words, there is a further discount that is offered in London that we don't get here. It has to be paid in London funds always.

Q. And I understand that is an offering on the list prices of the goods?—A. The list prices, yes.

Mr. Skinner also produced an affidavit of Cyril Arch Jewsbury, a director of Pearson-Page-Jewsbury Co., Ltd., which, as indicated above, was received in evidence (together with other documents) as collective exhibit 1. The following extracts are quoted from that affidavit:

3. "Peerage" brass ware is freely offered for sale and sold to all purchasers, in the ordinary course of trade, for home consumption in the United Kingdom, in certain minimum specified quantities of particular articles but without restriction as to the value in respect of any order, at the list prices as issued by the company from time to time, less 2½% cash discount. *No restrictions are imposed by the company on the price, sale, resale, use or disposition of such brass ware so purchased.*

4. Accompanying this affidavit is a price list of the company, effective during the month of May, 1948, showing the list prices of "Peerage" brass ware manufactured and sold by the company.

5. Also accompanying this affidavit is a schedule which contains a complete list of sales of "Peerage" brass ware made by Pearson-Page-Jewsbury Co., Ltd. for home consumption in the United Kingdom during the months of April and May, 1948, giving date of sale, purchaser's name, total price of goods ordered, discount allowed, and net price of goods sold. [Emphasis added.]

The evidence concerning the sales and conditions prevailing in the foreign home market introduced on behalf of plaintiff is not refuted by any proof introduced by the defendant. As matter of fact it would seem to be confirmed thereby. For instance, in defendant's

collective exhibit 3, a report of the Treasury representative under date of January 28, 1949, which is based upon information obtained at the offices of Pearson-Page-Jewsbury Co., Ltd., at Birmingham, England, from Cyril A. Jewsbury, above referred to, under the title "Foreign Value" on page 6 of said report appears the following:

Identical merchandise is freely offered for sale and sold in the home market for home consumption.

\*   \*   \*   \*   \*   \*   \*

There is attached in duplicate, marked Exhibit 6, a signed statement by Mr. C. A. Jewsbury regarding this manufacturer's method of doing business in the United Kingdom and also in the United States during the months of April to August, 1948, inclusive. This statement applies generally to this manufacturer's business.

Said exhibit 6, *supra*, recites in part—

The method of obtaining orders in the United Kingdom is through travelling representatives employed by the Company, or by the acceptance of orders received through the post.

All orders are subject to the terms and conditions laid down in the Company's price list issued in May 1948.

*No conditions are applied as to the methods of selling or the price at which goods are sold by retailers.*

Certain orders are accepted from wholesalers but over 90% of the trade is direct to the retail distributor. [Italics supplied.]

It would therefore appear that there existed a market in England for home consumption in which brassware such as is here in controversy was freely offered for sale and sold to all purchasers, as is required by section 402 (c) of the Tariff Act of 1930, as amended, *supra*.

Some reference in defendant's brief is made to the effect that the British Government exercised a price control applicable to merchandise of the kind here in issue. Defendant contends that this constituted a controlled market which would preclude the application of statutory foreign value. The defendant states in its brief that "A control by the government of prices at which merchants may sell or for other reasons has been held sufficient to consider such markets as 'controlled' and therefore ineffectual for duty purposes," citing *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262, and *United States* v. *R. H. Macy & Co.*, 20 Cust. Ct. 395, Reap. Dec. 7561.

Upon this phase of the present case the authorities just above cited stand for the proposition, succinctly stated, that—

\* \* \* The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its *resale, use or other disposition*, regardless of the source of such restraint. [Emphasis added.]

In the case before me, none of the elements constituting a controlled market referred to in the above quotation is present.

Various other authorities have been cited by the parties in their briefs, but I find it unnecessary to consider them individually herein.

I am satisfied that the weight of evidence clearly establishes a foreign market value for the merchandise in controversy, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*. Inasmuch as the parties have agreed that if the court finds that foreign value is the proper dutiable basis for the merchandise, the values at which the importer entered the importation represent the dutiable foreign values, I find and hold that the foreign value of the various articles in dispute are the *per se* unit prices, less 2½ per centum cash discount, plus case and packing, as entered by the importer.

Judgment will be entered accordingly.