# United States *v.* L. Bamberger & Co.

No. 7957.—

Entry Nos. N–563; N–539.

(Decided February 20, 1951)

*David N. Edelstein*, Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the plaintiff.

*Strauss & Hedges* (*Joseph Schwartz* of counsel) for the defendant.

Mollison, Judge: These are appeals filed by the collector of customs for reappraisement of certain square and round sterling silver compacts imported from Canada during the month of November 1945. The merchandise was entered and appraised on the basis of export value, the square compacts at $2.25 plus 8 per centum tax each, and the round at $3 plus 8 per centum tax each, both in United States currency. They are claimed to be properly dutiable on the basis of foreign value, the square compacts at $4.15 each, and the round at $5.50 each, both in Canadian currency. "Export value" and "foreign value" are defined in section 402 (c), as amended, and (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c) and (d)), and, for convenience, these provisions of the law, as well as subsection (a) of the same section, are quoted in the margin.[1]

At the trial of the issue the record in the case of *United States* v. *R. H. Macy & Co.*, the decision in which was reported in 20 Cust. Ct. 395, Reap. Dec. 7561, was incorporated as part of the record herein upon motion of counsel for the Government, there being no objection on the part of the defendant. There was received in evidence, likewise without objection on the part of the defendant, a copy of a report dated June 10, 1948, by E. J. Allen, a Treasury representative, together with four exhibits numbered 1, 2, 3, and 4 therein referred to.

---

[1] SEC. 402. VALUE.

(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

    (1) The foreign value or the export value, whichever is higher;

\*     \*     \*     \*     \*     \*     \*

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

There is, apparently, no dispute that at the time of exportation of the compacts in issue the manufacturer and exporter thereof, Dorel Jewellery Co., Ltd., of Montreal, Canada, freely offered the same for sale to all purchasers in the ordinary course of trade for exportation to the United States at prices of $2.25 for the square and $3 for the round, United States currency, packed, f. o. b. Montreal. No question as to usual wholesale quantities arises as the prices were not dependent upon the quantity purchased, and there is no dispute that Montreal constituted the principal market of the country of exportation for the merchandise in question. The above facts, therefore, establish the export values, as defined by the statute, section 402 (d), of the merchandise in question. The 8 per centum sales tax, added on entry and appraisement, does not apply to export transactions, and was apparently added in error.

With respect to the offer of such or similar merchandise for home consumption in Canada, it appears from the report of the customs agent which was received in evidence in the incorporated record as plaintiff's collective exhibit 1 that the manufacturer, Dorel Jewellery Co., Ltd., restricted its offers for home consumption to one wholesale distributing firm, Dorel Vanities, Ltd. According to the affidavit of the president of the manufacturing and exporting company, received in evidence in the incorporated record as defendant's exhibit 2, his company restricted its sales for home consumption in Canada "to wholesalers only" and it does not appear thereby that the sales were restricted to the single wholesaler named by the customs agent in his report.

It is immaterial to determine which of the two statements is correct since either of them brings the case directly under the rule laid down in *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436, where it was held that the restriction by a manufacturer of his sales to certain purchasers only, i. e., wholesalers, established that they were not in the ordinary course of trade, as required by the statute, and could not form the basis of foreign value.

Since foreign value at the level of the manufacturer has been shown not to exist, it is contended by the plaintiff that the prices at which Dorel Vanities, Ltd., the wholesaler, offered such or similar merchandise for sale for home consumption in Canada represented the foreign values thereof within the definition contained in section 402 (c), as amended, and that such prices were higher than the export values as above set forth, and under the requirement of section 402 (a) the higher foreign values must be taken as the value of the merchandise for tariff purposes.

According to the customs agent's report, collective exhibit 1 in the incorporated record, at the time of exportation of the merchandise

in issue the prices at which Dorel Jewellery Co., Ltd., sold to the wholesaler, Dorel Vanities, Ltd., as well as the price at which the wholesaler sold to retailers and the price at which the retailers sold to the ultimate consumer, were controlled by the Canadian Wartime Prices and Trade Board, an agency of the Canadian Government.

The case now before me is essentially a retrial of the issues presented in the incorporated case, in which Chief Judge Oliver was of the opinion that since it appeared that the price at which the compacts were offered and all other terms and conditions of sale were dictated by the Canadian Government, the market for home consumption was controlled and the goods were therefore not freely offered for sale within the meaning of the valuation statute.

The additional evidence offered in the present case is directed toward establishing that the prices set by the Canadian Government upon the merchandise for home consumption were maximum prices, and that the wholesalers could sell at lower prices. The case of *Mager & Gougelman, Inc.* v. *United States*, 13 Cust. Ct. 394, R'eap. Dec. 6065, holding that the fixing of minimum prices by a trade association did not constitute a controlled market, is cited as analogous in support of the argument that the mere fixing of maximum prices with freedom to sell for less did not constitute a controlled market.

I am of the opinion, however, that even if the additional evidence here introduced establishes that the prices for the compacts set by the Canadian Government for home consumption were only maximum prices and that lower prices were permissible, judgment must, nevertheless, be in favor of the defendant. An examination of the record incorporated herein, and particularly the affidavit of Eli Brown, president of the manufacturer and exporter of the compacts involved, received in evidence without objection as defendant's exhibit 2, reveals that whatever the effect of the prices set by the Canadian Wartime Prices and Trade Board, the manufacturer and exporter fixed not only the prices at which it would sell to wholesalers, but also the prices at which wholesalers could resell to retailers and the prices at which retailers could resell to consumers. The 4th, 5th, and 6th numbered paragraphs of the affidavit read as follows:

4. That such and similar silver compacts are also sold by Dorel Jewellery Company Limited for home consumption in Canada; that it makes such sales to wholesalers only; that the only prices at which it sold such or similar silver compacts for home consumption in Canada throughout the month of November, 1945, as well as previous to and subsequent to that time, were Canadian $2.25 each for the square compacts and Canadian $3.00 each for the round compacts, both those prices including packing, being FOB Montreal, and being subject to a Canadian luxury tax of 25% and a Canadian excise tax of 8% of those prices.

5. That such and similar compacts were resold by the Canadian wholesalers to the Canadian retailers for home consumption in Canada throughout the month

of November, 1945, as well as previous to and subsequent to that time, *but only at prices which were established by Dorel Jewellery Company Limited*, namely, Canadian $4.15 each for the square compacts and Canadian $5.50 each for the round compacts, including packing, being FOB Montreal, and including the aforementioned Canadian taxes.

6. That such and similar compacts were resold by the Canadian retailers for home consumption in Canada throughout the month of November, 1945 as well as previous to and subsequent to that time, *at prices which were established by the Dorel Jewellery Company Limited.* [Italics added.]

These facts have in no way been controverted, and they establish that price restrictions were imposed by the manufacturer upon resale for home consumption of compacts such as those here involved. Upon the authority of *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262, cited by Chief Judge Oliver in his opinion in the case the record in which was here incorporated, I therefore find that the market for home consumption was controlled.

In this situation, under the automatic operation of section 402 (a), *supra*, export value, the facts and elements as to which have been hereinbefore set out, becomes the proper basis of value for the merchandise in issue.

I find as facts:

1. That the merchandise consists of square and round sterling silver compacts manufactured by the Dorel Jewellery Co., Ltd., of Montreal, Canada, and imported into the United States from Canada in November 1945.

2. That price restrictions were imposed by the manufacturer upon resale for home consumption of compacts such as those here involved.

3. That the price, at the time of exportation of the compacts involved to the United States, at which such merchandise was freely offered for sale to all purchasers in the principal markets of Canada, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, was $2.25 each for the square compacts, and $3 each for the round compacts, United States currency.

I conclude as matters of law:

1. That the market for home consumption of compacts such as those here involved was controlled.

2. That the proper basis of value of the compacts in issue was export value, as defined in section 402 (d) of the Tariff Act of 1930.

3. That such value was $2.25 each for the square compacts, and $3 each for the round compacts, United States currency, packed.

Judgment will issue accordingly.