UNITED STATES *v.* L. BAMBERGER & CO.

No. 8081.—

Entry Nos. N–563; N–539.

Second Division, Appellate Term

(Decided February 5, 1952)

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Strauss & Hedges* (*Hadley S. King* and *Joseph Schwartz* of counsel) for the appellee.

Before LAWRENCE and FORD, Judges

FORD, Judge: This is an application for review of the decision and judgment of the trial court, filed under the provisions of title

28 U. S. C., sec. 2636 (a). The merchandise involved consists of certain square and round sterling silver compacts exported from Canada and entered at the port of Newark. These compacts were entered and appraised on the basis of export value, the square compacts at $2.25 each, plus 8 per centum tax, and the round compacts at $3 each, plus 8 per centum tax, both in United States currency. The collector of customs at New York filed these appeals and claims a value for the compacts on the basis of foreign value of $4.15 each for the square compacts and $5.50 each for the round compacts, both in Canadian currency.

These two appeals are in a sense a retrial of the issue presented in reappraisement 158662–A, etc., decided in *United States* v. *R. H. Macy & Co.*, and reported in 20 Cust. Ct. 395, Reap. Dec. 7561, from which no appeal was taken. When the two appeals herein were called for hearing, the record in the *Macy* case, *supra*, was, upon motion of the Government and without objection on the part of the importer, admitted in evidence as a part of the record herein. In addition there was received in evidence, without objection on the part of counsel for appellee, a copy of a report dated June 10, 1948, by E. J. Allen, Treasury representative, together with four exhibits therein referred to. This constitutes the entire record before us.

At the argument of this case, it was conceded by counsel for appellant that if the court should find that there was no foreign value for this merchandise, then the appraised values represented the correct export values thereof.

It appears from the report of the customs agent, in evidence as appellant's collective exhibit 1, that the manufacturer, Dorel Jewellery Co., Ltd., restricted its offers for sale for home consumption to one wholesale distributing firm, Dorel Vanities, Ltd. Appellee's exhibit 2 shows that the manufacturer and exporter restricted its sales for home consumption to wholesalers only, but does not show that such sales were restricted to Dorel Vanities, Ltd., as stated in appellant's collective exhibit 1.

Commenting upon this evidence, the trial court stated:

It is immaterial to determine which of the two statements is correct since either of them brings the case directly under the rule laid down in *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436, where it was held that the restriction by a manufacturer of his sales to certain purchasers only, i. e., wholesalers, established that they were not in the ordinary course of trade, as required by the statute, and could not form the basis of foreign value.

The additional evidence in the instant case, which was not in the *Macy* case, *supra*, is directed primarily toward establishing that the prices set by the Canadian Government upon the involved merchandise for home consumption are maximum prices only, and that the wholesaler could sell at lower prices. In support of the above proposition, there is cited the case of *Mager & Gougelman, Inc.* v. *United*

*States*, 13 Cust. Ct. 394, Reap. Dec. 6065, wherein it was held that the mere fixing of minimum prices by a trade association did not constitute a controlled market, and it is argued that if the mere fixing of minimum prices in the *Mager* case, *supra*, did not constitute a controlled market, then by the same reasoning the mere fixing of maximum prices would not constitute a controlled market in the case of the merchandise here involved.

The trial court disposed of the above contention in the following language:

I am of the opinion, however, that even if the additional evidence here introduced establishes that the prices for the compacts set by the Canadian Government for home consumption were only maximum prices and that lower prices were permissible, judgment must, nevertheless, be in favor of the defendant. An examination of the record incorporated herein, and particularly the affidavit of Eli Brown, president of the manufacturer and exporter of the compacts involved, received in evidence without objection as defendant's exhibit 2, reveals that whatever the effect of the prices set by the Canadian Wartime Prices and Trade Board, the manufacturer and exporter fixed not only the prices at which it would sell to wholesalers, but also the prices at which wholesalers could resell to retailers and the prices at which retailers could resell to consumers. The 4th, 5th, and 6th numbered paragraphs of the affidavit read as follows:

4. That such and similar silver compacts are also sold by Dorel Jewellery Company Limited for home consumption in Canada; that it makes such sales to wholesalers only; that the only prices at which it sold such or similar silver compacts for home consumption in Canada throughout the month of November, 1945, as well as previous to and subsequent to that time, were Canadian $2.25 each for the square compacts and Canadian $3.00 each for the round compacts, both those prices including packing, being FOB Montreal, and being subject to a Canadian luxury tax of 25% and a Canadian excise tax of 8% of those prices.

5. That such and similar compacts were resold by the Canadian wholesalers to the Canadian retailers for home consumption in Canada throughout the month of November, 1945, as well as previous to and subsequent to that time, *but only at prices which were established by Dorel Jewellery Company Limited*, namely, Canadian $4.15 each for the square compacts and Canadian $5.50 each for the round compacts, including packing, being FOB Montreal, and including the aforementioned Canadian taxes.

6. That such and similar compacts were resold by the Canadian retailers for home consumption in Canada throughout the month of November, 1945 as well as previous to and subsequent to that time, *at prices which were established by the Dorel Jewellery Company Limited*. [Italics added.]

These facts have in no way been controverted, and they establish that price restrictions were imposed by the manufacturer upon resale for home consumption of compacts such as those here involved. Upon the authority of *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262, cited by Chief Judge Oliver in his opinion in the case the record in which was here incorporated, I therefore find that the market for home consumption was controlled.

The above-quoted conclusions of the trial court appear to be amply supported by the record in this case, and the authorities cited are apt and controlling of the question presented. Although not cited or referred to by counsel for either party, it would seem that if further authority were needed to support the conclusions reached by the trial court, it is to be found in the case of *Goodyear Tire & Rubber Co.* v.

*United States*, 11 Ct. Cust. Appls. 351, T. D. 39158. There, the merchandise consisted of automobile tires imported from Canada. With reference to the manufacture, distribution, sale, and prices of these tires, the Court of Customs Appeals said:

\* \* \* The tires are manufactured in Canada and their distribution, sale, and the prices at which sold in Canada are absolutely under the control and controlled by the manufacturer from the time they leave the factory until they reach the hands of the ultimate consumer. The tires are distributed by 13 or 14 agencies of the Goodyear Co. and by a limited number of jobbers and dealers whose operations are restricted to districts selected and defined by the corporation. The corporation sells to exporters, to manufacturers of automobiles, to jobbers, and to dealers at a price graded and definitely fixed for each of the four classes of buyers. The prices at which jobbers may sell to dealers or service stations, and dealers and service stations may sell to consumers, are likewise fixed by the corporation.

Upon the above state of facts, the appellate court held as follows:

We hold, first, that in Canadian markets there was according to the record in this case no price at which Goodyear tires were at the time of exportation freely offered for sale in the usual wholesale quantities to all purchasers, and that therefore in the country of exportation such tires had no actual market value within the meaning of that term as defined by law; \* \* \*.

Upon the record before us, we find as facts:

1. That the merchandise involved in these appeals consists of square and round sterling silver compacts exported from Canada and entered at the port of Newark.

2. That the manufacturer and exporter fixed not only the prices at which it would sell to wholesalers, but also the prices at which wholesalers could resell to retailers and the prices at which retailers could resell to consumers.

3. That the price, at the time of exportation of the involved compacts to the United States, at which such merchandise was freely offered for sale to all purchasers in the principal markets of Canada, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, including all costs, charges, and expenses specified in section 402 (d) of the Tariff Act of 1930, was $2.25 each for the square compacts, and $3 each for the round compacts, United States currency.

We therefore conclude as matter of law:

1. That the market for home consumption for compacts such as those here involved, being controlled, there existed for said compacts no foreign market value.

2. That the proper basis of value for the involved compacts was export value, as defined in section 402 (d) of the Tariff Act of 1930.

3. That such values are as set out in finding of fact No. 3 above.

The judgment of the trial court is accordingly affirmed. Judgment will be rendered accordingly.