PAN-AMERICAN LUMBER COMPANY *v.* UNITED STATES

No. 8018.—
Entry Nos. 2234 and 5562.

(Decided June 15, 1951)

*Philip Stein* for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

CLINE, Judge: These appeals for reappraisement, consolidated at the trial, involve the value of semiporcelain figurines exported from Mexico on November 23, 1944, and April 30, 1945, respectively, and entered for consumption at the port of Laredo, Tex.

At the trial there was offered in evidence a copy of an agreement between the plaintiff and the manufacturer, entered into in Spanish and English, dated August 16, 1944, in Spanish, and September 14,

1944, in English, pursuant to which plaintiff became the sole representative of the manufacturer (Productos Cerámicos, S. A.) for the United States and Canada. (Plaintiff's collective exhibit 1.) Under this contract, plaintiff agreed to purchase goods from the manufacturer in the amount of $10,000 or more monthly, and the manufacturer agreed to sell to plaintiff at list prices, less a discount of 20 per centum.

Thereafter, since plaintiff was unable to comply with the requirement that it make purchases amounting to $10,000 monthly, the manufacturer advised plaintiff by letter, dated April 21, 1945, that it considered the contract canceled and would offer its products to other importers in the United States and Canada. (Plaintiff's exhibit 2.) The letter also stated that effective on the date thereof export prices would be at a discount of 25 per centum from price list No. 5, dated December 1, 1944.

It was stipulated at the trial that the prices were the same, regardless of quantity, and that the place of manufacture, Monterrey, Mexico, was one of the principal markets for the merchandise. It was conceded that there was no export value during the period covered by the contract, September 14, 1944, to April 21, 1945, but it was stipulated that there was a foreign value during that period. It was also conceded by both parties that after April 21, 1945, there were both foreign and export values for the merchandise; that the export value was no higher than the foreign value; and that the foreign value was the proper statutory basis for appraisement of the merchandise in both cases.

The merchandise was entered in each case on the basis of the list prices, less a discount of 20 per centum, plus packing, which plaintiff contends to be the dutiable foreign value of the merchandise. It was appraised on the basis of the list prices, net, plus cost of containers, which defendant claims to be the dutiable foreign value.

The sole issue therefore, is whether the freely offered prices were the list prices, net, or such prices, less a discount of 20 per centum.

At the trial, Charles H. Summers, a partner in the plaintiff company, testified that his firm entered into the agreement with the manufacturer, heretofore referred to (plaintiff's collective exhibit 1); that the contract was terminated on April 21, 1945; that he received price lists from the manufacturer from time to time; that after the contract was terminated, he did not have any special arrangement with the manufacturer and received no special discount other than the 25 per centum discount referred to in plaintiff's exhibit 2.

Emilio Gracia, called as a witness by the plaintiff, testified that he was assistant manager of Productos Cerámicos, S. A., the manufacturer of the merchandise involved herein; that he supervised everything concerning sales of the merchandise; that all the price lists issued

by his company were drawn up under his personal supervision and direction; that his firm gave plaintiff the wholesale discount given to everyone in Mexico who bought in wholesale quantities; that during the period of the contract, identical merchandise was sold in Mexico to buyers who wanted to buy in wholesale quantities; that the price depended upon the size of the business and the volume of purchases; that the highest discount was 20 per centum; that he sold to wholesalers and distributors in quantities larger than those bought by retailers, for instance, more than three of each figure and more than two pairs; that discounts were offered to wholesalers; that a few retailers boguht at list prices, without any discount; that 99 per centum of the merchandise was offered at a discount; that there was only one discount, 20 per centum, to all who purchased in wholesale quantities; that after April 1945, the discount changed to 25 per centum which was offered to the same distributors and wholesalers who had received the 20 per centum discount; that between September 1944 and April 1945, a lower discount of 10 per centum was offered to small merchants, small buyers, and retailers, according to the volume of purchases through a period of 6 months; that 5 or 10 per centum of the total sales was at the 10 per centum discount; that the invoices did not show the 20 per centum discount, but the discount was taken into consideration in the price.   There were received in evidence as plaintiff's collective exhibits 9–A and 9–B an invoice dated May 11, 1945, of goods sold to plaintiff, and an invoice dated May 11, 1945, of goods sold to Carlos A. de la Vega of Monterrey, Mexico.   Mr. Gracia testified that item 306 was sold to plaintiff at a price of 10 pesos, less 25 per centum, and the same item was sold to Vega at a net price of 8 pesos.   He stated that his firm recommended that resales be made at the list prices but there was no signed agreement to that effect and his firm did not force wholesalers to sell at any price.

On cross-examination, Mr. Gracia testified that his company sold only to distributors and wholesalers; that there was a verbal agreement according to which these wholesalers and distributors could not sell for export to the United States; that after the termination of the contract, anyone in the United States could buy from him; that there were approximately 26 distributors who could sell to anyone in Mexico; that they were free to sell at whatever prices they desired, but it was recommended that they sell at list prices; that they were not supposed to sell for export to the United States, but there was no supervision to see whether or not they did.

There were received in evidence price list No. 4, dated August 1, 1944 (plaintiff's collective exhibit 3–A), which indicates the prices in effect when the merchandise covered by reappraisement No. 176358–A was exported, and price list No. 5, dated December 1,

1944 (plaintiff's collective exhibit 3–B), which indicates the prices in effect when the merchandise covered by reappraisement No. 176359–A was exported. There were also received in evidence price lists numbered 6, 7, and 8, dated July 1, 1945, November 1, 1945, and January 1, 1946, respectively (plaintiff's collective exhibit 4), and a letter from the manufacturer to the plaintiff, dated December 6, 1944, referring to a change in prices (plaintiff's exhibit 5). Plaintiff's exhibit 8 is an affidavit of Andrew A. Yarte, general manager of Productos Cerámicos, S. A., stating that during the period from September 14, 1944, to April 21, 1945, the manufacturer freely offered its merchandise to distributors and wholesalers throughout Mexico at the same net prices as were being paid by plaintiff; that the manufacturer had no exclusive arrangement with the distributors, but freely offered its merchandise to all distributors in the usual wholesale quantities.

Defendant offered in evidence a report of Treasury Representative J. Eug. Cauchon, dated November 24, 1948 (defendent's exhibit 10). According to the report, Mr. Cauchon visited the offices of Productos Cerámicos, S. A., on November 15 and 16, 1948, and interviewed Mr. Emilio Gracia, from whom he obtained the following information:

Mr. Gracia said that such merchandise was not freely offered to all purchasers for home consumption. In the Republic of Mexico, Productos Ceramicos S. A. had selected distributors in each key city, and it had offered and sold only to those selected agencies, in the usual wholesale quantities, and in the ordinary course of trade.

At first, Productos Ceramicos, S. A. had three main distributors who had been given exclusive sales rights in specified districts. Mr. Gracia said, however, that his firm had soon realized that said distributors could not be controlled as to sales within their respective restricted territories, and it forthwith had proceeded to remove all territorial restrictions within the Republic, so that all distributors had been free to offer and sell to all purchasers, anywhere in Mexico, at whatever price they pleased.

The only restriction maintained, which was always adhered to by all distributors, was that of not exporting to the United States.

Following the lifting of territorial restrictions within Mexico, the number of distributors had been increased so that, by May 1945, when such merchandise was being offered to all purchasers in the United States, Productos Ceramicos had 26 distributors in Mexico, * * *.

\* \* \* \* \* \* \*

To these selected distributors, Productos Ceramicos had offered and sold at the current published list prices, less certain stated discounts, Mexican stamp tax and packing included.

Discounts had not been granted equally to all distributors. A sliding trade discount, maximum 25%, minimum 10%, had been granted wholly dependent on the volume of trade of each distributor. Mr. Gracia said that only the three main distributors had received the top 25% discount. The other distributors had been about equally divided as to discounts granted of 20%, 15% and 10%.

Mr. Cauchon states further that he visited some of the distributors and was informed that the merchandise had been freely offered by

all distributors to all purchasers for home consumption without restriction as to resale or use; that the current list prices of the manufacturer were used as base wholesale prices; that the prices did not depend on the quantity purchased; that various discounts were granted, ranging from 15 per centum to net; that the final agreement was arrived at by bargaining in each case.

In rebuttal, Mr. Gracia testified that the distributors listed in defendant's exhibit 10 were the only persons to whom his firm sold merchandise; that it was offered to everyone but these were the only ones who came to buy; that sales and offers were made only to wholesalers, distributors, or dealers.

The case turns on the question of whether the manufacturer freely offered and sold its merchandise to all purchasers. The evidence establishes that sales were made only to the 26 distributors listed in defendant's exhibit 10, with the possible exception of a few sales to retailers. The affidavit of Andrew A. Yarte (plaintiff's exhibit 8) states that the merchandise was freely offered in the usual wholesale quantities to all distributors, from which it may be inferred that it was not freely offered to other purchasers. See *United States* v. *F. W. Myers & Co., Inc.*, 20 Cust. Ct. 382, Reap. Dec. 7539, affirmed 24 Cust. Ct. 553, Reap. Dec. 7798. The report of Treasury Representative Cauchon (defendant's exhibit 10) states that the manufacturers offered and sold the merchandise to the 26 distributors only.

Mr. Gracia stated at the trial that the merchandise was offered to all purchasers, but no one but the 26 distributors came to buy. However, there is no other evidence in the record to support the statement that the merchandise was freely offered, and in rebuttal, Mr. Gracia testified that offers were made only to wholesalers, distributors, and dealers. It has been held that the mere statement by a witness that the exporter is prepared and willing to sell identical merchandise to others does not warrant the finding of the existence of a statutory market value. *United States* v. *Oceanic Trading Co.*, Reap. Circ. 3233; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118.

Section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides that the foreign value shall be the price at which such or similar merchandise is freely offered for home consumption to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade. In construing this section, it has been held that the expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers, or those of a particular class, but all who care to buy. *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs)

80, C. A. D. 129. Where the merchandise is offered by the manufacturers to one class of purchasers only, wholesalers, the sales prices of the manufacturers may not be accepted as the proper foreign value. *United States* v. *H. W. Robinson & Co.*, 19 C. C. P. A. (Customs) 274, T. D. 45436. See also *C. J. Tower & Sons* v. *United States*, 24 Cust. Ct. 502, Reap. Dec. 7770, where sales were limited to wholesalers and jobbers; *United States* v. *F. W. Myers & Co., Inc., supra,* where sales were limited to manufacturers; *United States* v. *J. J. Gavin & Co., Inc. (Soeldner-Heyman Co.)*, 24 Cust. Ct. 576, Reap. Dec. 7808, where sales were restricted to large consumers, dealers, and wholesalers; *United States* v. *L. Bamberger & Co.*, 26 Cust. Ct. 545, Reap. Dec. · 7957, where sales were restricted to wholesalers.

In the instant case it appears that sales and offers to sell were limited to "wholesalers whom we called sometimes distributors, dealers or wholesalers." Therefore, the prices at which the manufacturer sold its merchandise do not constitute the statutory foreign value of the merchandise.

Where the manufacturer's restrictions remove its price from consideration as dutiable value, as in the instant case, the prices at which wholesalers and dealers freely offer the merchandise to all purchasers are to be used in determining the dutiable value. *United States* v. *H. W. Robinson & Co., supra; United States* v. *J. J. Gavin & Co., Inc. (Soeldner-Heyman Co.), supra.*

The record herein shows that sales and offers for sale were made by the wholesalers and distributors to all purchasers for home consumption at list prices with varying discounts ranging from 15 per centum down to net, depending upon the bargaining ability of the purchaser. Since the only prices at which all purchasers could buy were the list prices, such prices constitute the foreign value of the merchandise herein. *United States* v. *Mexican Products Co., supra.*

The record established that there was an export value on April 30, 1945, the date of exportation of the merchandise involved in reappraisement No. 176359–A, namely, the list prices, less a discount of 25 per centum, but, since the foreign value was higher, it must prevail.

At the trial counsel for the plaintiff raised the question that in view of section 14.3 (*g*) and (*i*) of the Customs Regulations of 1943, plaintiff could cover a period in a test reappraisement case which would include all entries in which appraisement was withheld pending the decision in such a test case. However, in his brief, counsel states that "that issue does not now appear to be essential to a decision on the issues above mentioned." With this position the court is in agreement and does not pass upon the issue raised at the trial. Therefore, plaintiff's exhibit 6 for identification and collective exhibit 7 for identification, offered in support of its contention that the case at bar should cover later entries, are not admitted into evidence.

On the record herein, I find as facts:

1. That the merchandise herein consists of semiporcelain figurines exported from Mexico on November 23, 1944, and April 30, 1945.

2. That the place of manufacture, Monterrey, Mexico, was one of the principal markets for the merchandise.

3. That the prices were the same regardless of the quantity purchased.

4. That on November 23, 1944, the date of exportation of the merchandise involved in reappraisement No. 176358–A, the manufacturer sold for export to the United States, solely through the plaintiff, its exclusive agent.

5. That on April 30, 1945, the date of exportation of the merchandise involved in reappraisement No. 176359–A, the manufacturer offered its merchandise for export to the United States to plaintiff and others at list prices, less a discount of 25 per centum.

6. That during the period covered by both appeals herein, the manufacturer offered and sold its merchandise for home consumption to wholesalers, dealers, distributors, and a few retailers only.

7. That during the period covered by both appeals herein, wholesalers and distributors freely offered the merchandise for sale for home consumption to all purchasers at the manufacturer's list prices with varying discounts, ranging from 15 per centum down to net, depending upon the bargaining ability of the purchaser.

I conclude as a matter of law:

1. That there was no export value on November 23, 1944, the date of exportation of the merchandise involved in reappraisement No. 176358–A.

2. That an export value existed on April 30, 1945, the date of exportation of the merchandise involved in reappraisement No. 176359–A.

3. That a foreign value existed during the period covered by both appeals herein.