(A. R. D. 21)

PAN-AMERICAN LUMBER COMPANY *v.* UNITED STATES

Entry Nos. 2234 and 5562.

First Division, Appellate Term

(Decided April 23, 1953)

*Philip Stein* (*Marjorie M. Shostak* of counsel) for the appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (*William J. Vitale* and *Richard F. Weeks,* special attorneys), for the appellee.

Before OLIVER, MOLLISON, and FORD, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: This case comes before us as a review of the decision in *Pan-American Lumber Company* v. *United States*, 26 Cust. Ct. 720, Reap. Dec. 8018, wherein the trial judge sustained the appraised values of certain semiporcelain figurines exported from Mexico on November 23, 1944, and April 30, 1945, and entered for consumption at the port of Laredo, Tex.

The specific dates of exportation are significant. The earlier one, November 23, 1944, was within the period, fixed by contract (collective exhibit 1), when appellant was the sole representative of the Mexican manufacturer (Productos Cerámicos, S. A.) for the United States and Canada. At the later date, April 30, 1945, such relationship between the said parties had been terminated, and the Mexican manufacturer was freely offering its products for exportation to the United States and Canada.

Consistent with those conditions, the parties agreed to a set of facts showing that there was no export value for the merchandise in question during the period covered by the said contract but there was a foreign value during that period; that subsequent thereto, there were both foreign and export values; that the export value was no higher than the foreign value; and that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as modified by the Customs Administrative Act of 1938, is the proper basis for appraisement of the present merchandise.

Under additional stipulated facts, it is established that prices for this merchandise were the same, regardless of the quantity purchased, and that the place of manufacture, Monterrey, Mexico, was one of the principal markets in the country of exportation.

Appellant entered its merchandise on the basis of the list prices set forth in price list No. 5, dated December 1, 1944, less a discount of 20 per centum, plus packing. Appraisement was made on the basis of the list prices, net, plus cost of containers. Thus, the sole issue herein is whether the freely offered prices, as contemplated by section 402 (c), as modified, *supra*, are the list prices, net, as appraised, or the list prices, less a discount of 20 per centum, as entered.

The record consists of oral testimony and documentary evidence offered by appellant, and a Treasury representative's report (exhibit 10) introduced by appellee. The decision of the trial judge contains a clear, concise, and correct review of the evidence. It is deemed unnecessary to repeat such a detailed analysis herein. We shall, therefore, refer to only such portions of the evidence as are necessary to support our conclusions.

The record amply supports the finding by the trial judge that the Mexican manufacturer limited its sales and offers for sale of merchandise, such as that under consideration, to distributors or whole-

salers. Accordingly, the trial court held—and we are in complete accord with the conclusion—that the manufacturer's prices, not being freely offered *to all purchasers*, are not representative of statutory foreign value.

It follows therefrom that the conditions surrounding the transactions of the wholesalers or distributors become the primary consideration in determination of the present issue. In this connection, there is record evidence, introduced by both parties, showing that the wholesalers or distributors sold or freely offered for sale articles, such as those in question, "to all purchasers, anywhere in Mexico, at whatever price they pleased" (exhibit 10). We refer to specific parts of the record establishing these facts.

Emilio Gracia, the Mexican manufacturer's assistant manager who supervised everything concerning sales of the merchandise and directed the preparation of price lists issued by his company, testified as follows:

X Q. Now, were these distributors or dealers or wholesalers, about how many were there that you sold to in Mexico?—A. I don't remember the number. It was 4 or 5 years ago, but about 20, I guess—20 or 30. I don't remember the number.

X Q. Would you say they were somewhere around 26—approximately 26?— A. Approximately, yes, but I am not sure.

X Q. And according to your oral agreement or verbal agreement with them they could sell in Mexico to anyone, is that right?—A. Yes, yes.

 * * * * * * *

X Q. Mr. Gracia, did I understand you to say that you had sort of a little arrangement with these distributors so that they would sell in Mexico, for consumption in Mexico at the list prices?—A. We recommended that, but we didn't force them; they were free.

X Q. They were free to sell at whatever prices they so desired?—A. Yes, but we only recommended to sell at list prices.

X Q. And you are not familiar with the way, that is, with any of their books as to the method of the way they sold the merchandise or the prices at which they sold?—A. No, no.

Corroborative of appellant's testimony, as hereinabove quoted, is information under the heading "FOREIGN VALUE," in the Treasury representative's report, reading as follows:

Mr. Gracia said that such merchandise was not freely offered to all purchasers for home consumption. In the Republic of Mexico, Productos Ceramicos S. A. had selected distributors in each key city, and it had offered and sold only to those selected agencies, in the usual wholesale quantities, and in the ordinary course of trade.

At first, Productos Ceramicos, S. A. had three main distributors who had been given exclusive sales rights in specified districts. Mr. Gracia said, however, that his firm had soon realized that said distributors could not be controlled as to sales within their respective restricted territories, and it forthwith had proceeded to remove all territorial restrictions within the Republic, so that all distributors had been free to offer and sell to all purchasers, anywhere in Mexico, at whatever price they pleased.

The Treasury representative's report further shows, based on information obtained directly from distributors, that "such merchandise had been freely offered by all distributors to all purchasers for home consumption without restriction as to resale or use," that "all distributors had used as base wholesale prices the current list prices of Productos Ceramicos, S. A.)," that various discounts were granted, ranging from 15 per centum down to net, and that "there was no fixed policy in regard to discounts, the final agreement being arrived at by bargaining in each case" (exhibit 10, page 8).

The case of *United States* v. *H. W. Robinson & Co.*, 19 C. C. P. A. (Customs) 274, T. D. 45436, presented a situation analogous to that existing herein. There, as here, the manufacturer sold the merchandise to wholesalers only, and the wholesalers freely offered the products to all purchasers. Because of the restriction exercised by the manufacturer, the court properly held that the manufacturer's price did not represent the dutiable value. The wholesalers' price, being freely offered to all purchasers, was accepted as the statutory foreign value. The same reasoning has application to and is controlling of the present issue. Accordingly, the wholesalers' or distributors' prices meet the requirements of foreign value for the present merchandise.

The case of *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129, is also in point. There, the merchandise in question consisted of Mexican glassware. The record established that the articles were sold both for home consumption and for export to the United States at the manufacturer's list prices net, or at net, less varying rates of discount which depended either on the status of the purchaser or his bargaining ability. Under such conditions, the court found the manufacturer's list prices to be the proper values. The court's conclusion was stated as follows:

As there is no evidence of record that merchandise like that here involved was sold or freely offered for sale to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade in the principal market of Mexico, either for consumption in Mexico or for export to the United States, at prices less than the manufacturer's list prices, it should have been held that the proper dutiable values of the involved merchandise are the manufacturer's list prices, plus packing * * *. [Italics quoted.]

The record herein establishes facts the same as those which prevailed in the *Mexican Products Co.* case, *supra*. Hence, the reasoning employed and the conclusions reached in that case have equal application in the present case.

For the reasons hereinabove set forth, we find as a matter of fact:

1. That the merchandise herein consists of semiporcelain figurines exported from Mexico on November 23, 1944, and April 30, 1945.

2. That the place of manufacture, Monterrey, Mexico, was one of the principal markets for the merchandise.

3. That the prices were the same regardless of the quantity purchased.

4. That on November 23, 1944, the date of exportation of the merchandise involved in reappraisement No. 176358–A, the manufacturer sold for export to the United States, solely through the appellant, its exclusive agent.

5. That on April 30, 1945, the date of exportation of the merchandise involved in reappraisement No. 176359–A, the manufacturer freely offered its merchandise for export to the United States at list prices, less a discount of 25 per centum.

6. That during the period covered by both appeals herein, the manufacturer offered and sold its merchandise for home consumption to wholesalers, dealers, distributors, and a few retailers only.

7. That during the period covered by both appeals herein, wholesalers and distributors freely offered the merchandise for sale for home consumption to all purchasers at the manufacturer's list prices with varying discounts, ranging from 15 per centum down to net, depending upon the bargaining ability of the purchaser.

Accordingly, we conclude as matter of law:

1. That there was no export value on November 23, 1944, the date of exportation of the merchandise involved in reappraisement No. 176358–A.

2. That an export value existed on April 30, 1945, the date of exportation of the merchandise involved in reappraisement No. 176359–A.

3. That a foreign value existed during the period covered by both appeals herein.

4. That the foreign value is higher than the export value which existed on April 30, 1945.

5. That the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as modified, *supra*, is the proper basis for determining the value of the merchandise herein.

6. That such values are the appraised values.

The judgment of the trial court is affirmed.

### DISSENTING OPINION

MOLLISON, Judge: I regret I cannot concur with my colleagues in their findings and conclusions with respect to the issues in this case, which, to the writer, at least, bring into sharp focus a basic proposition with respect to the interpretation of the words "all purchasers" as used in the valuation statute.

The merchandise involved was manufactured in Monterrey, Mexico, by Productos Cerámicos, S. A., and there is not in issue any question as to the existence of merchandise similar thereto, that is to say, we are here concerned with the value, for tariff purposes, of the imported merchandise insofar as such value is represented by the market value or price, under the statutory conditions set forth in section 402, as amended, of the Tariff Act of 1930 (19 U. S. C. § 1402), of merchandise "such" as that here involved.

Both parties contend for values for the merchandise based upon foreign value, which is defined in section 402 (c), as amended, of the Tariff Act of 1930, it having been stipulated (and the stipulated facts are corroborated by the record) that during the times here material either no export value, as defined in section 402 (d) of the said tariff act, existed, or when such value existed it was not higher than the foreign value of the merchandise.

No question of usual wholesale quantities appears to be involved, it having been stipulated that the prices at which the merchandise was freely offered and sold were the same regardless of the quantity, and there is no question but that Monterrey, Mexico, was a principal market in Mexico for such merchandise.

The crux of the matter, and the main point on which the parties disagree, is the price at which the merchandise was freely offered for sale to "all purchasers." The Government contended both below and here, and the trial court found, that sales and offers to sell by the manufacturer for home consumption were limited to a class of purchasers known as wholesalers or distributors, and, although it is not completely spelled out in either the findings of the court below or in the contentions of the Government, presumably that the class of purchasers to which offers and sales were limited did not embrace "all" purchasers within the meaning of that term as used in the statute. Additionally, it is contended by the Government that the price at which such merchandise was offered for sale to the limited class was not a uniform price, being subject to discounts from list prices established by the manufacturer ranging from 25 per centum to 10 per centum which were arrived at on the basis of the individual bargaining abilities of the purchaser and seller.

Citing the cases of *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308; *United States* v. *Mexican Products Co.*, 28 id. 80, C. A. D. 129; *United States* v. *H. W. Robinson & Co.*, 19 id. 274, T. D. 45436; *C. J. Tower & Sons* v. *United States*, 24 Cust Ct. 502, Reap. Dec. 7770; *United States* v. *F. W. Meyers & Co., Inc.*, 20 id. 382, Reap. Dec. 7539; *United States* v. *J. J. Gavin & Co., Inc. (Soeldner-Heyman Co.)*, 24 id. 576, Reap. Dec. 7808; and *United States* v. *L. Bamberger & Co.*, 26 id. 545, Reap. Dec. 7957, the court

below held that the prices at which the manufacturer sold its merchandise did not constitute the statutory foreign value of the merchandise.

The trial court then found that the record established that at the sales level below the manufacturer, the wholesalers and distributors freely offered such merchandise for sale for home consumption to all purchasers at prices represented by the manufacturer's list prices with varying discounts, ranging from 15 per centum down to net, depending upon the bargaining ability of the purchaser. Citing the case of *United States* v. *Mexican Products Co.*, *supra*, the court held that the only prices at which all purchasers could buy were the list prices, which it found, with the addition of the cost of packing, to be the foreign value of each of the items involved.

On behalf of the importer, appellant here, it is contended that such merchandise was freely offered for sale to all purchasers for home consumption in Mexico by the manufacturer at the list prices, less a discount of 20 per centum, and that these prices, plus packing, represent the correct foreign values for the items involved.

Counsel for the appellant has pointed out that during the course of the opinion rendered below, the trial judge referred to certain cases decided by this and our appellate court, viz, *United States* v. *Oceanic Trading Co.*, Reap. Circ. 3233; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196; and *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118, which stand for the proposition that—

* * * the mere statement by a witness that the exporter is prepared and willing to sell identical merchandise to others does not warrant the finding of the existence of a statutory market value * * *

which type of evidence, it is contended, was not adduced herein and which cases are not pertinent to the issues herein.

An examination of the record before us indicates that the observations of counsel for the appellant are correct. However, it does not appear that the court below based its decision at all upon the proposition of law or the cases just above cited, so that the error, if such it may be denominated, was harmless.

It is clear to the writer from an examination of all of the evidence that the primary effort of the manufacturer and exporter in the offer and sale of its products in Mexico for home consumption was to sell its products to the so-called wholesale level of trade, that is to say, to those who, in turn, would sell to retailers. Note the following testimony by Emilio Gracia, the assistant manager of the manufacturer and exporter, who supervised all the sales, prices, and discounts, when asked to whom in Mexico articles such as those here involved were sold:

A. To all purchasers handling figures like ours—I mean figurines—and everything for presents and gifts.

Q. And to what class of merchants did you sell them?—A. To what kind of merchants?

Q. Yes; retailers?—A. *No; wholesalers;* sometimes we call them distributors, some other times, wholesalers.

Q. Distributors and wholesalers mean the same to you?—A. Yes, sir. [Italics added.] (Tr. p. 66.)

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Q. Now, your price lists 4 and 5, in evidence as Collective Exhibit 3–A and 3–B, 4 and 5, did those indicate any discount at which you were offering or selling the merchandise?—A. No; list prices do not show discounts.

Q. Did you, however, invariably offer discounts or not?—A. *Yes, just to wholesalers.* Just a few times some retailers bought from us on list prices, without any discount, but just a few.

Q. Just a few?—A. Yes.

Q. Did that happen often or seldom?—A. No; seldom—2 or 3 in a year.

Q. I see. Now, was most of your merchandise sold with a discount?— A. Yes, I imagine 99 per cent. [Italics added.] (Tr. pp. 67–8.)

The Government offered in evidence a report of Treasury Representative J. Eugene Cauchon concerning an investigation made by him in Mexico in connection with the shipments here in question, and it was received in evidence as defendant's exhibit 10 over the objection of counsel for the importer. The report is dated November 24, 1948, and states that the information therein contained was furnished by Mr. Gracia during a visit made by the Treasury representative on November 15 and 16, 1948, about a year and a quarter prior to the testimony given by Mr. Gracia at the trial.

The Treasury representative quotes Mr. Gracia as saying that the manufacturer offered the merchandise only to certain selected distributors in each key city in Mexico and did not offer it to all distributors. A list of 26 firms in Mexico, said by the Treasury representative to be the selected distributors at the time of the exportations here involved, was examined by Mr. Gracia during the course of his testimony. He stated that the 26 were the only ones to whom sales were made, but stated that although the merchandise was "offered to everybody," the 26 were "the only ones who came to us to buy" and whose credit warranted sales to them.

The court below was evidently convinced, as we are, from the record evidence that the manufacturer freely offered the merchandise for sale only to wholesalers or distributors. Citing the cases which have been already referred to, *supra,* for the proposition that where merchandise is offered by the manufacturers to one class of purchasers only, the sales prices may not be accepted as the proper foreign value, the court below eliminated from consideration the offered prices at the manufacturer's level, and based her determination of the value upon a consideration of the evidence of the prices at which the merchandise

was offered for sale at the wholesalers' or distributors' level. In so doing, the court below was motivated by her adoption of a construction of the term "all purchasers" as meaning "all who care to buy."

This construction of the term, which first appeared in the opinion of a majority of the Court of Customs and Patent Appeals in the case of *United States* v. *American Glanzstoff Corp.*, *supra*,[1] has received considerable application in both this and our appellate court. The inescapable implication of the construction of the term has not, it seems to the writer, been carried into effect in the application of the construction in various cases, and this is illustrated by its use in the determination of the present matter by the court below, and by the majority here.

The quoted construction of the term seems to imply that merchandise must be offered *at a uniform price to the entire buying public in the foreign market* before the offered price may be accepted as meeting the requirement of the statute. Literally, "all of those who cared to buy such goods in such markets" would include purchasers and consumers at retail, which was quite obviously not the intention of the framers of the valuation provisions. Factually, the words contemplate a situation which rarely, if ever, exists, i. e., that in the markets of the world merchandise is offered at a uniform price to all classes of purchasers and all levels of trade.

In the application of the construction of the term by the courts since its enunciation, it seems to the writer that some departure has been made from the literal context of the words. In the case at bar, there does not seem to be any question but that "all of those who cared to buy such goods in such markets" were two classes of purchasers, i. e., wholesalers or distributors were one class, and retailers were the other class. The court below first determined that offers to the wholesalers or distributors class were not within the purview of the statute by reason of having been limited to a special class to the exclusion of the other class and, consequently, rejected them and did not consider them. She then, in effect, determined that the only offers which came within the purview of the statute were those to the retailers class.

But these latter offers were themselves limited, in the sense that they were made to only one class of purchaser, the retailers, to the exclusion of the other class of purchaser, i. e., wholesalers or distributors. Such offers certainly did not encompass "all of those who cared to buy such goods in such markets," and it seems to the writer they are subject to the same defect which might be deemed to bar from consideration the offers by the manufacturer to wholesalers or distributors.

---

[1] The exact wording in the *American Glanzstoff Corp.* case is "all of those who cared to buy such goods in such markets."

In this situation, it is my view that there was no—

> * * * price at the time of exportation of such merchandise to the United States, at which such or similar merchandise [was] freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, * * *

and, consequently, no foreign value therefor, within the meaning of the statute as it has been construed, existed. As the parties have confined their proof to the single issue of foreign value and offered no proof as to any other basis of value other than to establish that no export value existed, I believe that this court and the court below have no evidence before them upon which the value of the merchandise can be determined.

Judgment should therefore issue reversing the decision and judgment of the court below and remanding the cases to the said court with instruction to dismiss the appeals for reappraisement for lack of proof.